Filed 1/29/14  P. v. Vaughn CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HENRY K. VAUGHN,<br><br>    Defendant and Appellant. | B244543<br><br>(Los Angeles County<br> Super. Ct. No. SA071987) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Affirmed.

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Henry K. Vaughn appeals from the judgment entered following his conviction by jury on one count of first degree burglary (Pen. Code, § 459).[1] Appellant challenges his conviction on three grounds: ineffective assistance of counsel, the alleged violation of his right to a jury selected from a fair cross section of the community, and the trial court's finding that he was competent to stand trial. We find none of his claims meritorious and therefore affirm.

On August 11, 2009, around 4:45 a.m., City of Hawthorne Police Officer Shawn Shimono responded to a disturbance of the peace call at an apartment complex in the City of Hawthorne. When he arrived, he saw a Ford Explorer parked in an open visitor parking area, which was adjacent to the secured underground parking garage. The Explorer's rear hatch was open, and the interior light was on. A pedestrian access gate into the parking garage was propped open with an orange traffic cone.

Officer Shimono looked inside the Explorer's rear hatch and saw several lug wrenches, a wheel, a tire, and a cinder block for a brick wall. There was no one in the car. Officer Shimono heard metal banging noises inside the parking garage and thought it was a burglary in progress. He called for additional units and while he was waiting, he saw appellant stand up from between a black Ford Mustang and another vehicle parked next to it and come out of the secured parking area,. Officer Shimono asked appellant if he lived at the apartment complex, and appellant replied that he did not, but his cousin did. Appellant stated that his cousin asked him to repair the lug nuts on the Mustang.

Officer Shimono examined the Mustang and discovered that it was raised off the ground, resting on a cinder block in the rear and a jack in the front. The rear

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

2

tire was gone, and there were lug nuts on the ground. The front tire's lug nuts had been removed. Additional officers arrived and detained appellant.

The Ford Explorer was registered to appellant. The Ford Mustang belonged to a resident of the apartment building, James Franks. Franks did not know appellant and did not give him permission to remove the lug nuts, rims, or wheels from the car.

Appellant was charged with one count of residential burglary (§ 459). The information further alleged that appellant had suffered three prior strikes (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and two prior serious felony convictions (§ 667, subd. (a)(1)), and that he had served two prior prison terms (§ 667.5, subd. (b)).

Dr. Sanjay Sahgal was appointed to examine appellant pursuant to Evidence Code section 730. In his report dated October 31, 2009, Dr. Sahgal concluded that appellant suffered from a mental disorder, which the doctor described as "a cognitive disorder not otherwise specified and a history of cocaine dependence." He noted that "[t]here were no identifiable signs of malingering during the interview." Dr. Sahgal further concluded that appellant was not competent to stand trial, stating that his "cognitive impairment suggests that he would be unable to cooperate in a rational manner with counsel."

At a November 9, 2009 hearing, the court found that appellant was not competent to stand trial, relying on Dr. Sahgal's report. The court therefore suspended the criminal proceedings and ordered appellant to be placed in Patton State Hospital until his competency was restored.

On April 6, 2010, the court indicated that it had received a certificate of mental competency from the director of Patton State Hospital pursuant to section 1372. The report concluded that, although appellant had problems with speech and

3

memory, he was malingering. The conclusion was based on reports that appellant was observed "interacting in a perfectly normal fashion and then switching when . . . he was speaking to somebody who would be in a position to evaluate him." Defense counsel, Hope Vannorsdall, contested the certificate. The criminal proceedings remained adjourned, and the court set a mental competency hearing pursuant to section 1369, which was continued numerous times. In 2011, the court ordered another report to be prepared regarding appellant's prognosis.

On July 7, 2011, Dr. Gordon Plotkin sent a psychiatric evaluation of appellant to appellant's new attorney, Angelo Tarallo. Dr. Plotkin concluded that appellant had a major mental disorder, although the "exact nature" of the disorder was "somewhat unclear." He described appellant's long history of psychiatric symptoms, such as hallucinations and depression. In addition, appellant's medical history included strokes, cancer, and injuries from falls during strokes, and he had been classified as developmentally disabled. Dr. Plotkin concluded that appellant was competent despite his mental disorder because he was able to answer questions appropriately and understood the nature of the proceedings against him.

At a July 21, 2011 hearing, Tarallo challenged the conclusion that appellant was competent, pointing out that Dr. Plotkin's conclusion that appellant had a major mental disorder was inconsistent with the conclusion from Patton State Hospital. He further argued that Dr. Plotkin was chosen by former defense counsel, and he asked for an evaluation from a different doctor, questioning Dr. Plotkin's conclusion that appellant had a major mental disorder and yet could not identify the disorder. Tarallo also expressed doubts about appellant's competency, explaining to the court that appellant was not able to respond appropriately to questions or stay focused on the issues. The court denied the request to appoint

4

another doctor and found appellant competent to stand trial, based on Dr. Plotkin's report and the certificate of competency from Patton State Hospital.

A jury trial commenced in February 2012. The jury found appellant guilty of first degree burglary. Appellant waived his right to a jury trial on his prior convictions. The court found true the allegations of prior convictions. Appellant was sentenced to the midterm of four years, doubled pursuant to the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), plus 10 years for two prior convictions pursuant to section 667, subdivision (a)(1), for a total of 18 years. The court denied appellant's request to dismiss a prior strike but struck appellant's one-year priors (§ 667.5, subd. (b)). Appellant filed a timely notice of appeal.

After review of the record, appellant's court-appointed counsel filed an opening brief asking this court to review the record independently pursuant to the holding of *People v. Wende* (1979) 25 Cal.3d 436, 441.

On May 23, 2013, we advised appellant that he had 30 days within which to submit any contentions or issues that he wished us to consider. After being granted an extension of time, appellant filed a supplemental brief on August 22, 2013, raising three issues. First, he claims ineffective assistance of counsel. Second, appellant contends that he was denied his constitutional right to a jury of his peers because there were no African Americans on the jury, citing *People v. Carpenter* (1999) 21 Cal.4th 1016. Appellant's third contention is that the trial court erred in finding him mentally competent to stand trial.

I.    *Ineffective Assistance*

Appellant states in a declaration that neither Vannorsdall nor Tarallo consulted with him or discussed his case with him. He also contends that Vannorsdall failed to obtain video surveillance tapes and lab data that she had

5

planned to obtain. In addition, appellant states in his declaration that Tarallo counseled him to reject the plea offer of nine years and go to trial because he guaranteed appellant would be acquitted. In all his previous criminal cases, appellant had taken plea bargains.

Our courts have "'repeatedly emphasized that a claim of ineffective assistance is more appropriately decided in a habeas corpus proceeding.' [Citations.]" (*People v. Jones* (2003) 30 Cal.4th 1084, 1105.) Thus, "'"[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citation.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

The record does not shed any light on why appellant's two attorneys acted or failed to act in the manner appellant alleges. There is nothing in the record about video surveillance tapes or lab data.

As to appellant's contention that Tarallo counseled him to go to trial, the record indicates that Tarallo actually counseled appellant not to go to trial but to accept the plea offer. On February 9, 2012, prior to beginning voir dire, the court told appellant, "I know Mr. Tarallo has spent a significant time – amount of time talking to you this morning about this case and about the People's offer." The court asked appellant if he understood that he faced a maximum term of 29 years if convicted and gave Tarallo time to speak with appellant about a nine-year offer from the prosecution. Appellant stated that he wanted to go to trial. Tarallo said, "If you are convicted, you are going to get more than nine years in prison." Appellant replied, "Yeah." Tarallo asked, "We discussed this, correct? [¶] . . . [¶] And you understand what we discussed, correct?" Appellant replied, "Yeah."

6

The record does not support appellant's contention and does not shed light on counsel's actions. Nor was either counsel asked for an explanation. We therefore reject appellant's claim of ineffective assistance of counsel.

II. *Jury Composition*

A criminal defendant is entitled to "a jury 'selected from a fair cross section of the community.' [Citations.] '"That guarantee mandates that the pools from which juries are drawn must not systematically exclude distinctive groups in the community. [Citation.]"' [Citation.] 'In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.' [Citation.]" (*People v. Ramirez* (2006) 39 Cal.4th 398, 444.)

Appellant argues that the courthouse was next to Compton, California, which is predominantly Black and Hispanic, but his jury was all white. He further argues that there were only nine Blacks in a jury of pool of 60 "in a community of mostly Black residents." Appellant has not established a prima facie violation of the fair cross-section requirement. He has not offered any statistical evidence regarding the community, such as statistics drawn from census data, voter registration lists, or Department of Motor Vehicle records. Nor has he shown that any alleged disparity "is the result of an improper feature of the jury selection process. [Citation.]" (*People v. Burgener* (2003) 29 Cal.4th 833, 857.) Moreover, there was no challenge raised to the jury panel in the trial court. Appellant's challenge to the jury composition is unmeritorious.

7

III.    *Mental Competency*

Appellant contends that his competency was still at issue when he went to trial.  He argues that the finding of malingering was incorrect, explaining that he was "expelled from Patton State Hospital" because he "refused to testify against another patient."

"'A defendant is presumed competent unless the contrary is proven by a preponderance of the evidence.'  [Citation.]"  (*People v. Turner* (2004) 34 Cal.4th 406, 425.)  "On appeal, the reviewing court determines whether substantial evidence, viewed in the light most favorable to the verdict, supports the trial court's finding."  (*People v. Lawley* (2002) 27 Cal.4th 102, 131.)

The certificate of competency from Patton State Hospital is not in the record.  However, the record indicates that the director of the hospital found appellant competent to stand trial.  In addition, Dr. Plotkin concluded that appellant was competent to stand trial.  Substantial evidence thus supports the trial court's finding that appellant was competent to stand trial.

We have examined the entire record and are satisfied that no arguable issues exist, and that appellant has, by virtue of counsel's compliance with the *Wende* procedure and our review of the record, received adequate and effective appellate review of the judgment entered against him in this case.  (*Smith v. Robbins* (2000) 528 U.S. 259, 278; *People v. Kelly* (2006) 40 Cal.4th 106, 112-113.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



WILLHITE, Acting P. J.



We concur:



MANELLA, J.



SUZUKAWA, J.

9